**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**PHOEBE DACHA,**

    **Plaintiff,**

       **v.**                                                  **Civil Action No. 3:24cv173**

**SHELBY MOODY**, *et al.*,

    **Defendants.**

<u>**MEMORANDUM OPINION**</u>

This matter comes before the Court on eight motions:

1.     Defendant Paris Veillard's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 11);

2.     Defendant the Honorable Linda Lambert's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (ECF No. 17);

3.     Defendant Shelby Moody's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 21);

4.     Defendant Sydney Emory's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (ECF No. 24);

5.     Ms. Dacha's Motion for Leave to File Sur-reply in Opposition to Judge Lambert's Motion to Dismiss, (ECF No. 30);

6.     Ms. Dacha's Motion for Leave to File Second Amended Complaint, (ECF No. 32);

7.     Ms. Dacha's Supplemental Notice and Motion to Supplement the Record, (ECF No. 46); and

8.     Ms. Dacha's Motion for Appointment of Counsel, (ECF No. 42).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will grant the Motions

to Dismiss. (ECF Nos. 11, 17, 21, 24.) The Court will grant Ms. Dacha's Motion for Leave to

File Sur-reply. (ECF No. 30.) The Court will deny Ms. Dacha's Motion for Leave to File

Second Amended Complaint, (ECF No. 32), Supplemental Notice and Motion to Supplement the

Record, (ECF No. 46), and Motion for Appointment of Counsel, (ECF No. 42).

## I. Factual and Procedural Background

### A.     Factual Background[1]

This action arises out of child custody proceedings in the Henrico County Juvenile and

Domestic Relations District Court ("J&DR Court") that resulted in a "permanent child protective

order" against Ms. Dacha. (ECF No. 6, at 10.)

Ms. Dacha names as Defendants Shelby Moody, a Senior Family Specialist for the

Henrico County Department of Social Services ("Family Services Specialist Moody"); Sydney

---

[1] In considering the Motions to Dismiss, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Ms. Dacha. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Ms. Dacha attached a number of documents to the Amended Complaint, (ECF Nos. 6-1–6-6), which the Court considers part of the Amended Complaint in ruling on the motions to dismiss. *See Sec. of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

Additionally, on June 5, 2024, Ms. Dacha filed several "Supplemental Documents." (ECF No. 7.) Ms. Dacha did not seek, and the Court did not grant, leave to file these supplemental documents. The Court does not consider them as part of the Amended Complaint.

Paris Veillard and Judge Linda Lambert also attach documents to their motions to dismiss, (ECF No. 12, at 8–10; ECF No. 18-1, at 2–8), and Ms. Dacha attaches documents to several of her responses in opposition, (ECF No. 27, at 6–7; ECF No. 27-1, at 1–9). Courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6), though courts may consider a document attached by the defendant to its motion to dismiss where the document was integral to and explicitly relied on in the complaint and where the plaintiffs do not challenge its authenticity." *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011) (quotation omitted). Here, the Court reaches its conclusions without relying on the parties' supplemental documentation.

Emory, a Senior Family Services Specialist for Chesterfield County Department of Social Services ("Family Services Specialist Emory"); Paris Veillard, the Guardian *ad litem* ("GAL Veillard") appointed by the J&DR Court to represent the interests of Ms. Dacha's minor child; Judge Linda Lambert ("Judge Lambert"), the J&DR judge who presided over Ms. Dacha's proceedings; and Gary Christopher White ("Mr. White"), the father of Ms. Dacha's minor child. (ECF No. 6, at 3–4.)  With the exception of Mr. White, Ms. Dacha sues each Defendant in his or her official capacity.  (ECF No. 6, at 3–4.)

Ms. Dacha alleges that on February 24, 2023, Family Services Specialist Moody notified her via "a text" that her minor child would be removed from her custody.  (ECF No. 6, at 10; ECF No. 6-1.)  Ms. Dacha alleges that this decision was made "without having conducted a family assessment, despite there being a verbal safety plan already in place."  (ECF No. 6, at 10.)

On March 6, 2023, Family Services Specialist Moody filed a petition in J&DR Court (the "Petition") alleging that Ms. Dacha's minor child had been abused and seeking a preliminary child protective order against Ms. Dacha.  (ECF No. 6-5, at 1.)  The same day, the J&DR Court entered a Preliminary Child Protective Order, ordering that "Ms. Dacha . . . have no contact with [her] [minor child]."  (ECF No. 6-5, at 22–23.)   The J&DR Court appointed GAL Veillard as the minor child's guardian *ad litem.*  (*See* ECF No. 6-5, at 22.)

Over the next year, the J&DR Court held at least five hearings on the Petition.[2]  (ECF No. 6-5, at 2–4, 8, 12–15, 19–21, 26–28.)  During a hearing on May 10, 2023, the J&DR Court

---

[2] The Hon. Marissa D. Mitchell, not Judge Lambert, presided over some of the J&DR proceedings, including hearings on March 6, March 10, and May 10, 2023.  (ECF No. 6-2, at 1; ECF No. 6-5, at 22–24 (hearing on March 6), 2–4 (hearing on March 10), 7–10 (hearing on May 20).)

Following each of these hearings, the JD&R Court issued a new Preliminary Child Protective Order, some of which modified the terms of its predecessor.  For example, on March

3

granted Ms. Dacha's child's father's motion to quash a subpoena seeking his psychiatric records because they "[were] not relevant." (ECF No. 6-5, at 7.)

Until the final hearing on April 24, 2024, when she appeared *pro se*, (ECF No. 6-5, at 30, 33, 35–36), Ms. Dacha was represented by counsel at each J&DR hearing, (ECF No. 6-5, at 22, 7–10, 13–15, 21–22, 26).[3]

On April 24, 2024, Judge Lambert issued an Adjudicatory Order finding Ms. Dacha's minor child abused or neglected under Virginia law, (ECF No. 6-5, at 30–31), and a Dispositional Order, (ECF No. 6-5, at 34), ordering the implementation of a Final Child Protective Order that limited Ms. Dacha's contact with her child until their eighteenth birthday, (ECF No. 6-6, at 7–8). On April 26, 2024, Ms. Dacha filed a Motion for Reconsideration with the J&DR court seeking reconsideration of the Final Child Protective Order. (ECF No. 6-6, at 1–6.) Judge Lambert "declined to reconsider" the Final Child Protective Order. (ECF No. 6, at 11.)

Ms. Dacha now challenges several aspects of the J&DR proceedings. First, she alleges that "[t]he [J&DR] court did not comply with mandated timelines for child dependency cases, leading to unnecessary procedural delays in violation of Virginia code requirements." (ECF No 6, at 10.) Ms. Dacha further alleges that, in an effort to "conceal the court's neglect regarding

---

10, 2023, the J&DR Court issued a second Preliminary Child Protective Order, which modified the terms of the original protective order and permitted Ms. Dacha to "have contact with [her] child in the discretion of HDSS and [the guardian *ad litem*]." (ECF No. 6-5, at 2–4.) On May 10, 2023, the J&DR Court issued a third Preliminary Child Protective Order further, this time allowing Ms. Dacha "to have supervised telephonic contact with [her] child" and "in-person contact . . . when recommended by the child's therapist." (ECF No. 6-5, at 8–10.) As the case proceeded through J&DR Court, the restrictions on Ms. Dacha's access to her child relaxed.

[3] Ms. Dacha was represented by several attorneys throughout the pendency of the case, including David Giroux, Lynn Robinson, Lindsay Dugan, and Janet Brown. (ECF No. 6-5, at 22, 7–10, 13–15, 21–22, 26.)

the mandated timelines as dictated by Virginia code," "the lower court retroactively amended the effective date of the preliminary protective order from March 10, 2023 to February 8, 2024, without a change in the terms of the order or appropriate notification and without a legitimate legal basis."[4]  (ECF No. 6, at 11.)

Ms. Dacha also alleges that "Judge Lambert dismissed [her] legal representation" while Ms. Dacha was not present, "effectively denying [Ms. Dacha] her right to an attorney."  (ECF No. 6, at 10.)  Ms. Dacha also contends that "[c]ritical information" about a medical condition her child's father has was "withheld" from her and "impair[ed] her ability to mount an effective defense."  (ECF No. 6, at 10.)

Ms. Dacha further alleges that the J&DR court's adjudication of the Petition on April 24, 2024 was "expedited," so Ms. Dacha was "not [] fully heard."  (ECF No. 6, at 10.)  After issuing the Child Protective Order, Judge Lambert "declined to reexamine" the order, "continuing to deny [Ms. Dacha's] pursuit of justice."  (ECF No. 6, at 11.)

Finally, Ms. Dacha alleges that during a hearing on March 10, 2023, her "child's father made statements of a culturally biased nature, including the demand for the child's passport to be surrendered, and uttered xenophobic remarks outside of the courtroom setting."  (ECF No. 6, at 10; ECF No. 6-2, at 1.)

Ms. Dacha also challenges aspects of the reunification efforts.  She alleges that "[n]o reunification plan was put in place by Henrico [Department of Social Services], the GAL, or the court," that "they prematurely assumed that a mere two therapy sessions were adequate to deem reunification efforts unsuccessful," and that "[r]outine case reviews by professionals . . . were absent."  (ECF No. 6, at 10.)

---

[4] Ms. Dacha does not explain what "lower court" engaged in this conduct.

As relief, Ms. Dacha requests the following:

I. I seek the Court to rectify the wrongs by restoring my parental rights, and for the court to order a comprehensive review of the protective order and my child's custody arrangement.

II. Monetary compensation is requested for the harm suffered, including actual damages for the cost of medical treatment for my son, attorney[']s fees related to this matter and seeking to retain [counsel] for this Federal case.

III. Punitive damages for the willful and malicious conduct of the defendants, which has been deeply traumatizing and life-altering.

(ECF No. 6, at 6.)

### B.    **Procedural Background**

On March 8, 2024, Ms. Dacha initiated the instant lawsuit by filing a Motion for Leave to

Proceed *in forma pauperis*.  (ECF No. 1.)  On April 11, 2024, Ms. Dacha paid the filing fee,

(ECF No. 2), and filed her complaint, (ECF No. 4).  On May 10, 2024, Ms. Dacha filed an

Amended Complaint, (ECF No. 6), which she "supplemented" with additional documents on

June 5, 2024, (ECF No. 7).

The Amended Complaint asserts four counts:[5]

**Count One:**   Fourteenth Amendment Due Process and Equal Protection[6]

**Count Two:**   Adoption Assistance and Child Welfare Act ("AACWA"), 42 U.S.C. § 671(a)(15)[7]

---

[5] The Amended Complaint does not contain discrete counts that it connects to specific defendants.  To ensure a full record and complete analysis of the issues, the Court assumes that Ms. Dacha asserts all four counts against each Defendant.

[6] The Amended Complaint appears primarily to allege due process violations rather than equal protection violations, and Defendants' motions to dismiss construe Ms. Dacha as alleging due process violations.

[7] In Count Two, Ms. Dacha refers to the governing law as the "Adoption and Safe Families Act."  The provision under which she sues is part of the Adoption Assistance and Child Welfare Act ("AACWA") of 1980, not the "Adoption and Safe Families Act."  The Court refers to the law as named—the AACWA—and not as identified by Ms. Dacha in her Amended Complaint.

**Count Three:** Title VI of the Civil Rights Act of 1964

**Count Four:** AACWA, 42 U.S.C. § 675(5)(B)[8]

(ECF No. 6, at 4–5, 8.)

On April 9, 2025, GAL Veillard filed a Motion to Dismiss. (ECF No. 11.) Ms. Dacha responded in opposition. (ECF No. 14.)

On May 9, 2025, Judge Lambert filed a Motion to Dismiss. (ECF No. 17.) Ms. Dacha responded in opposition, (ECF No. 27), and Judge Lambert replied, (ECF No. 29). On June 9, 2025, Ms. Dacha filed a Motion for Leave to File a Sur-reply to Judge Lambert's reply. (ECF Nos. 30, 31), and Judge Lambert responded, (ECF No. 33).

On May 21, 2025, Family Services Specialist Moody filed a Motion to Dismiss. (ECF No. 21.) Ms. Dacha responded in opposition. (ECF No. 28.)

The Court issued *Roseboro* notices to Ms. Dacha for each Motion to Dismiss. (ECF Nos. 13, 23, 26, 40.)

On June 9, 2025, Ms. Dacha filed a Motion to Amend/Correct the Amended Complaint. (ECF No. 32.) Judge Lambert responded in opposition, (ECF No. 34), and Ms. Dacha replied, (ECF No. 37). On January 12, 2026, Ms. Dacha also filed a Supplemental Notice and Motion to Supplement the Record. (ECF No. 46.) Judge Lambert responded in opposition, (ECF No. 48), and Ms. Dacha replied, (ECF No. 51).

On November 7, 2025, Ms. Dacha filed a Motion to Appoint Counsel. (ECF No. 42.)

---

[8] 42 U.S.C. § 675(5)(B) is a provision of the AACWA, which is part of Title 42, Chapter 7 of the United States Code, governing Social Security. For consistency, the Court refers to Ms. Dacha's claim in Count 4 as one brought under the AACWA, not the Social Security Act.

On December 18, 2025, this Court ordered Ms. Dacha to show cause as to why she had not yet effectuated service on Mr. White. (ECF No. 44.)  On January 12, 2026, Ms. Dacha responded to the show cause order, (ECF No. 45), and on January 29, 2026, she filed a Proof of Service/Declaration Regarding Service, (ECF No. 50).

## II. Analysis

### A. Motions to Dismiss

The Court first considers the four motions to dismiss. (ECF Nos. 11, 17, 21, 24.)  For the reasons articulated below, the Court will grant each of the motions to dismiss.

#### 1. Standards of Review

##### a. Rule 12(b)(1) Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways.  First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

8

A Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n* 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

### b.    Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

9

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

## 2.   Judge Lambert's Motion to Dismiss

Judge Lambert moves to dismiss Ms. Dacha's claims against her under Rule 12(b)(1) on the grounds that Ms. Dacha's claims are barred under the *Rooker-Feldman* doctrine and that Judge Lambert is immune from suit under the doctrine of judicial immunity, as well as under 12(b)(6) for failure to state a claim on which relief can be granted. (ECF No. 17, at 1; ECF No. 18, at 6–11.) For the reasons articulated below, the Court finds that Ms. Dacha's claims are not

barred by *Rooker-Feldman*, but that Judge Lambert is entitled to judicial immunity. The Court

will dismiss Ms. Dacha's claims against Judge Lambert.[9]

### a.   *Rooker-Feldman* Does Not Strip the Court of Jurisdiction to Consider Ms. Dacha's Claims

#### i.   Legal Standard: *Rooker-Feldman*

The *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing state court

decisions. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Ct. of App. v.*

*Feldman*, 460 U.S. 462, 482 n.16 (1983). The doctrine bars the party that lost in state court from

"seeking what in substance would be appellate review of the state judgment in a United States

district court, based on the losing party's claim that the state judgment itself violates the loser's

federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994); *see also ExxonMobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

*Rooker-Feldman*'s reach is narrow. As the United States Supreme Court has explained,

the doctrine "is confined to cases' possessing four characteristics: those '"[1] brought by state-

court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the

district court proceedings commenced and [4] inviting district court review and rejection of those

---

[9] Ms. Dacha filed a Motion for Leave to File Sur-reply seeking leave to file a sur-reply to Judge Lambert's reply in support of her Motion to Dismiss. (ECF No. 30.) Leave to file a sur-reply is ordinarily granted only where the moving party raises new issues in reply. *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495 (MHL), 2017 WL 7693141, at *1–2 (E.D. Va. Oct. 31, 2017). "[W]here a party seeks merely to re-open briefing on issues previously raised, a sur-reply should not be allowed." *Id.* (quotation omitted).

Judge Lambert raises no new issues in her reply that would require leave to file a sur-reply. (*See generally* ECF No. 29.) However, because Judge Lambert does not oppose Ms. Dacha's Motion for Leave to File Sur-reply, (ECF No. 33), and because Ms. Dacha proceeds *pro se*, the Court will grant Ms. Dacha's Motion for Leave to File Sur-reply, (ECF No. 30).

judgments.'" *T.M. v. Univ. of Md. Med. Sys. Corp.*, 139 F.4th 344, 350 (4th Cir. 2025) (quoting *ExxonMobil*, 544 U.S. at 284).

> ### ii.  *Rooker-Feldman* Does Not Bar Ms. Dacha's Claims Because She Filed Her Federal Case Before Final Judgment Was Rendered in the J&DR Court Proceeding

Ms. Dacha's claims meet three of the four *Rooker-Feldman* requirements.  First, Ms. Dacha "lost" in state court when the JD&R Court heard the temporary Petition and entered the final Protective Order against Ms. Dacha.  Second, Ms. Dacha now asserts injuries resulting from this unfavorable resolution in JD&R Court, including constitutional and statutory violations stemming from the proceeding that resulted in the Protective Order.  And fourth, she seeks review and reversal of the JD&R Court proceedings through "restor[ation of her] parental rights" and a "comprehensive review of the protective order" and the child custody arrangement.  (ECF No. 6, at 6.)

But the third factor, whether the state judgment was rendered before the district court proceedings commenced, is not satisfied.  Judge Lambert issued the Final Protective Order on April 24, 2024.  (ECF No. 6-6, at 7–8.)  Although Ms. Dacha filed the operative Amended Complaint on May 10, 2024, (ECF No. 6), she initiated this federal lawsuit on March 8, 2024, (ECF No. 1), over a month *before* Judge Lambert rendered the Final Protective Order.  "Because [the *Rooker-Feldman*] doctrine requires the federal action to be filed *after* the state-court judgment," *Rooker-Feldman* does not apply to Ms. Dacha's claims.  *Davis v. Samuel I. White, P.C.*, No. 3:13-cv-780 (REP), 2014 WL 1604270, at *5 n.2 (E.D. Va. Apr. 21, 2014) (finding *Rooker-Feldman* did not bar plaintiff's suit where plaintiff "managed to file [his] action in federal court just before the" state court rendered judgment); *Chahmoune v. Clark*, No. 1:21-CV-42 (RDA/TCB), 2022 WL 811297, at *5 (E.D. Va. Mar. 16, 2022) (explaining that a "state court

proceeding [] must reach judgment before a federal complaint is filed for *Rooker–Feldman* to be applicable"); *Field Auto City, Inc. v. General Motors Corp.*, 476 F. Supp. 2d 545, 552–53 (E.D. Va. 2007) (explaining that "the state court proceeding that must reach judgment before a federal complaint is filed for *Rooker-Feldman* to be applicable is the . . . *trial court's judgment*" and declining to preclude the operation of *Rooker-Feldman* where the "*state trial court [had] rendered judgment, but state appeals [were] not yet complete* when the federal action [was] filed") (quotation omitted and emphasis added); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 n.6 (4th Cir. 2006) ("In *Exxon*, of course, Exxon could not have been complaining that the state-court decision itself caused it injury *because at the time Exxon filed its federal suit, the state court had not even reached a final judgment in the parallel state case*.") (emphasis added).

Accordingly, *Rooker-Feldman* does not bar Ms. Dacha's claims. The Court next considers whether judicial immunity shields Judge Lambert from Ms. Dacha's claims. It does.

**b.    The Court will Dismiss Ms. Dacha's Claims Against Judge Lambert Because Judge Lamber is Entitled to Judicial Immunity**

**i.    Legal Standard:  Judicial Immunity**

Judges are absolutely immune from suits under § 1983 for acts committed within their judicial discretion. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). "Absolute judicial immunity exists 'because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.'" *Lesane v. Spencer*, No. 3:09-cv-012, 2009 WL 4730716, at *2 (E.D. Va. Dec. 8, 2009) (citations omitted) (quoting *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972), *overruled on other grounds, Pink v. Lester*, 52 F.3d 73,

77 (4th Cir. 1995)). A judge is entitled to immunity even if "the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." *Stump*, 435 U.S. at 356.

Only two exceptions apply to judicial immunity: (1) nonjudicial actions; and (2) those actions "though judicial in nature, taken in complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citation omitted).

### ii.    <u>Judge Lambert is Entitled to Judicial Immunity</u>

Ms. Dacha alleges that "Judge Lambert dismissed [her] legal representation" while Ms. Dacha was not present, "effectively denying [Ms. Dacha] her right to an attorney," that the J&DR Court's adjudication of the Petition on April 24, 2024 was "expedited," so Ms. Dacha was "not [] fully heard," and that after issuing the Protective Order, Judge Lambert "declined to reexamine" the order, "continuing to deny [Ms. Dacha's] pursuit of justice." (ECF No. 6, at 10–11.)

All of these actions occurred during the J&DR proceedings, and are actions ordinarily undertaken by judges within the scope of their work. Although Ms. Dacha argues that Judge Lambert's actions were "plausibly non-judicial actions or taken in excess of jurisdiction," (ECF No. 27, at 3), she alleges no facts that, even read favorably, can be deemed nonjudicial actions or actions in complete absence of jurisdiction. *See, e g.*, Va. Code § 16.1-241(A) (setting forth the "exclusive original jurisdiction" that J&DR courts have "over all cases, matters, and proceedings involving . . . custody, visitation, support, control or disposition of a child).

Because Judge Lambert acted within the scope of her judicial authority, she is entitled to judicial immunity. The Court will grant Judge Lambert's Motion to Dismiss, (ECF No. 17), and dismiss Ms. Dacha's claims against her.

### 3.    GAL Veillard's Motion to Dismiss[10]

GAL Veillard argues that Ms. Dacha's claims against her should be dismissed because Ms. Dacha's Amended Complaint (1) fails to state a claim with requisite specificity, (2) GAL Veillard was not acting under color of state law in her role as a GAL and accordingly cannot be liable under § 1983, and (3) GAL Veillard is entitled to quasi-judicial immunity. The Court concludes that GAL Veillard is entitled to quasi-judicial immunity, and the Court will dismiss Ms. Dacha's claims against her.

### a.    The Court will Dismiss Ms. Dacha's Claims Against GAL Veillard Because GAL Veillard is Entitled to Quasi-Judicial Immunity

#### i.    Legal Standard:  Quasi-Judicial Immunity

In *Fleming v. Absill*, the United States Court of Appeals for the Fourth Circuit determined that the immunity afforded to "judges, prosecutors, witnesses, and other actors in the judicial process" should likewise be afforded to guardians *ad litem*. *Fleming v. Absill*, 42 F.3d 886, 889 (4th Cir. 1994). The Fourth Circuit explained:

> "A guardian ad litem must . . . be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as an advocate for the child in judicial proceedings."

*Id.* (quoting *Kurzawa v. Mueller*, 732 F.3d 1456, 1458 (6th Cir. 1984)). Thus, a guardian *ad litem* is immune from liability where the actions complained of "occur[] within the judicial

---

[10] GAL Veillard filed her Motion to Dismiss and accompanying memorandum "*pro se*," although she included her Virginia State Bar number on her filings and appears to be a licensed attorney in the Commonwealth. (ECF No. 12, at 6.) Although filings by *pro se* parties are ordinarily construed liberally, the Court will not afford GAL Veillard the "liberal and lenient treatment extended to non-lawyers who are acting *pro se*." *Rashad v. Jenkins*, No. 3:15-cv-655 (REP), 2016 WL 901279, at *3 (E.D. Va. Mar. 3, 2016).

process, even if he or she engaged in misconduct such as "[lying] to the judge in open court." *Fleming*, 42 F.3d at 889.

Applying *Fleming*, Virginia federal courts routinely afford quasi-judicial immunity to guardians *ad litem* for their actions taken within judicial proceedings. *See, e.g., Kandare v. Gillies*, No. 2:20-cv-318 (RAJ), 2021 WL 4932003, at *16–17 (E.D. Va. July 29, 2021); *Bailey v. Ritchie*, 5:25-cv-00141, 2026 WL 210416, at *4 (W.D. Va. Jan. 27, 2026) ("[G]uardians *ad litem* in custody cases are afforded quasi-judicial immunity from § 1983 actions while acting as an agent of the judiciary, even if they engage in misfeasance of their duties." (citation omitted))

### ii.    GAL Veillard is Entitled to Quasi-Judicial Immunity

Ms. Dacha alleges that GAL Veillard refused to institute a reunification plan between Ms. Dacha and her child. (ECF No. 6, at 8, 10.) But GAL Veillard was appointed by the J&DR Court to serve as a guardian *ad litem* to represent the interests of Ms. Dacha's minor child, and her "refusal" to institute a reunification plan falls squarely within her discretion to consider the child's interests. *See Gardner ex rel Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (holding that a guardian *ad litem* "should be absolutely immune when acting as an integral part[] of the judicial process," including when "exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court").[11]

---

[11] In her response to GAL Veillard's Motion to Dismiss, Ms. Dacha raises a series of allegations that were not raised in the Amended Complaint, including that GAL Veillard "fail[ed] to conduct an investigation, present[ed] one-sided information, and advocat[ed] against reunification." (ECF No. 13, at 3.) Although the Court declines to consider these allegations because they were not clearly raised in the Amended Complaint, the Court observes that, even if they were, such actions would still be shielded by quasi-judicial immunity because these activities were part of the JD&R Court's "judicial process." *Fleming*, 42 F.3d at 889 (finding that a guardian *ad litem* would still be "immune from § 1983 liability" even if he or she engaged in misconduct, such as "[lying] to the judge in open court").

GAL Veillard is entitled to quasi-judicial immunity, and the Court will dismiss Ms. Dacha's claims against her.

### 4.     Family Services Specialist Moody's Motion to Dismiss

Family Services Specialist Moody separately moves to dismiss Ms. Dacha's claims against her. She argues that the Court lacks jurisdiction over Ms. Dacha's claims under the *Rooker-Feldman* doctrine and that, in the alternative, Ms. Dacha has failed to state a claim against her because (1) the Amended Complaint does not allege the violation of any Henrico Department of Social Services ("HDSS") policy, practice, or custom that would serve as a basis for *Monell* liability necessary for her to prevail on her Fourteenth Amendment claim; (2) the AACWA provisions under which Ms. Dacha sues neither confer a private right of action nor create an implied cause of action; and, (3) the Amended Complaint is bereft of any allegations that Family Services Specialist Moody discriminated against Ms. Dacha based on her race or national origin in violation of Title VI of the Civil Rights Act of 1964.[12]  (ECF No. 22, at 8–14.)

As the Court explained above, Ms. Dacha's claims are not barred by *Rooker-Feldman.* The Court therefore considers Family Services Specialist Moody's grounds for dismissal under Rule 12(b)(6). For the reasons articulated below, the Court finds that Ms. Dacha has not stated a claim against Family Services Specialist Moody as to any count and will dismiss all claims against her.

---

[12] As Family Services Specialist Moody notes, the Amended Complaint "does not contain discrete counts that it connects to specific defendants." (ECF No. 22, at 5.) To ensure a full record and complete analysis of the issues, the Court assumes, as does Family Services Specialist Moody, that Ms. Dacha asserts all four counts against each Defendant.

a.    **Count One:  The Amended Complaint Fails to State a Claim Against Family Services Specialist Moody Under the Fourteenth Amendment Because it Does Not Allege an Unconstitutional Policy, Practice, or Custom**

i.    **Legal Standard:  *Monell* Liability**

Under § 1983, "official capacity suits [against municipal employees] are treated as suits against the municipality." *Atkinson v. Godfrey*, 100 F.4th 498, 509 (4th Cir. 2024).  And "[f]or purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Although an underlying constitutional violation is a necessary element of municipal liability, it is not sufficient; "'a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.'" *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Instead, liability will arise only "'when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible [for] under § 1983.'" *Id.* at 554 (quoting *Monell*, 436 U.S. at 694).

The United States Court of Appeals for the Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

18

### ii.    The Amended Complaint Does Not Allege an Unconstitutional Policy, Practice, or Custom

Reading the Amended Complaint favorably, Ms. Dacha appears to allege that Family Services Specialist Moody deprived her of her Fourteenth Amendment right to due process because "[n]o reunification plan was put into place by [H]DSS" and "[HDSS] prematurely assumed that a mere two therapy sessions were adequate to deem reunification efforts successful." (ECF No. 6, at 8, 10.)  Because Ms. Dacha sues Family Services Specialist Moody in her official capacity, her suit against Family Services Specialist Moody operates as a suit against HDSS.  Accordingly, Ms. Dacha must allege that the violation of her constitutional rights stemmed from an unconstitutional policy, practice, or custom.  *See Lytle*, 326 F.3d at 471.

Rather than attacking any broader policy, practice, or custom, Ms. Dacha's allegations against Family Services Specialist Moody are based on specific actions taken in her case, which fail to constitute a policy or custom under any of the "avenues" identified by the Fourth Circuit and that are required to state a claim for municipal liability.  *Lytle*, 326 F.3d at 471.

Accordingly, Ms. Dacha fails to state a claim against Family Services Specialist Moody under Count One, and the Court will dismiss this claim against Family Services Specialist Moody.

### b.    Counts Two and Four:  Ms. Dacha Fails to State a Claim Under the AACWA Because the Provisions Under Which Ms. Dacha Sues Neither Create a Private Right of Action Nor Include an Implied Cause of Action

In Counts Two and Four, Ms. Dacha brings claims under two provisions of the AACWA: 42 U.S.C. §§ 671(a)(15) and 675(5).  "The [AACWA] establishes a federal reimbursement program for certain expenses incurred by the States in administering foster care and adoption services." *Suter v. Artist M.*, 503 U.S. 347, 350–51 (1992).  "The [AACWA] provides that States

19

will be reimbursed for a percentage of foster care and adoption assistance payments when the State satisfies the requirements of the Act." *Id.* at 351 (citing 42 U.S.C. §§ 672–674, 675(4)(A)). "To participate in the program, States must submit a plan to the Secretary of Health and Human Services for approval by the Secretary." *Id.* (citing §§ 670, 671). "Section 671 lists 16 qualifications which state plans must contain in order to gain the Secretary's approval." *Id.* In Count Two, Ms. Dacha sues under § 671(a)(15), alleging that one of § 671's sixteen qualifications was not met in her case.

Another provision of the AACWA, § 675, defines terms used in the AACWA, including in § 671. In Count Four, Ms. Dacha sues under § 675(5), which defines "case review system." § 675(5)'s definition of "case review system" is invoked in § 671(a)(16), another one of § 671's enumerated plan qualifications—although not one under which Ms. Dacha sues.

As the Court explains below, Ms. Dacha cannot sue under the AACWA's definition section, so her claim under § 675(5) necessarily fails. However, considering Ms. Dacha's *pro se* status, the Court will liberally construe Ms. Dacha's claim brought under § 675(5) as one brought under § 671(a)(16)—the provision of the AACWA that invokes § 675(5)'s definition of "case review system." The Court therefore considers whether Ms. Dacha states a claim against Family Services Specialist Moody under any of three AACWA provisions: §§ 671(a)(16), 671(a)(15), or 675(5). Her claims under all three provisions fail.

### i.    Legal Standard: The Adoption Assistance and Child Welfare Act

As explained above, two AACWA plan "qualifications" are relevant here: those set out in §§ 671(a)(15) and 671(a)(16). Section 671(a)(15)(B) provides that "reasonable efforts shall be made to preserve and reunify families." 42 U.S.C. § 671(a)(15)(B). Reasonable efforts include "prevent[ing] or eliminat[ing] the need for removing the child from the child's home before

placement of a child in foster care" and "mak[ing] it possible for a child to safely return to the

child's home." § 671(a)(15)(B)(i)–(ii). "In determining reasonable efforts to be made with

respect to a child . . . and in making such reasonable efforts, the child's health and safety shall be

the paramount concern[.]" *Id.* § 671(a)(15)(A).

      Section 671(a)(15) "neither confers an enforceable private right on its beneficiaries nor

creates an implied cause of action on their behalf." *Suter*, 503 U.S. at 364; *Jonathan R. v.*

*Justice*, No. 3:19-cv-00710, 2023 WL 184960, at *15 (S.D.W.Va. Jan. 13, 2023).[13]

      Section 671(a)(16) requires, in relevant part, for states to establish a "a case review

system which meets the requirements described in sections 675(5) and 675a." § 671(a)(16).

Section 675(5), invoked by § 671(a)(16), defines "case review system" as a "procedure for

assuring that—

> (B) the status of each child is reviewed periodically but no less frequently than once
> every six months either before a court or by administrative review (as defined in
> paragraph (6)) in order to determine the safety of the child, the continuing necessity
> for and appropriateness of the placement, the extent of compliance with the case
> plan, and the extent of progress which has been made toward alleviating or

---

[13] Following *Suter*, Congress enacted legislation intending to limit the scope of the holding. It provides:

> In an action brought to enforce a provision of this chapter, such provision is not to
> be deemed unenforceable because of its inclusion in a section of this chapter
> requiring a State plan or specifying the required contents of a State plan. This
> section is not intended to limit or expand the grounds for determining the
> availability of private actions to enforce State plan requirements other than by
> overturning any such grounds applied in Suter v. Artist M., 112 S. Ct. 1360 (1992),
> but not applied in prior Supreme Court decisions respecting such enforceability;
> provided, however, that *this section is not intended to alter the holding in Suter v.*
> *Artist M. that section 671(a)(15) of this title is not enforceable in a private right of*
> *action.*

42 U.S.C. § 1320a-2 (emphasis added).

      Congress did not overturn *Suter*'s holding that § 671(a)(15) neither confers a private right
of action nor creates an implied cause of action remains. § 1320a-2.

mitigating the causes necessitating placement in foster care, and to project a likely date by which the child may be returned to and safely maintained in the home or placed for adoption or legal guardianship, and, for a child for whom another planned permanent living arrangement has been determined as the permanency plan, the steps the State agency is taking to ensure the child's foster family home or child care institution is following the reasonable and prudent parent standard and to ascertain whether the child has regular, ongoing opportunities to engage in age or developmentally appropriate activities (including by consulting with the child in an age-appropriate manner about the opportunities of the child to participate in the activities)[.]

42 U.S.C. § 675(5)(B).

As with § 671(a)(15), courts within the Fourth Circuit have found that § 671(a)(16) "is not privately enforceable." *Jonathan R.*, 2023 WL 184960, at *15–17.

### ii. Ms. Dacha Does Not State a Claim Against Family Services Specialist Moody Under the AACWA

Ms. Dacha alleges that Family Services Specialist Moody violated her rights under §§ 671(1)(15) and 675(5)(B) because she notified Ms. Dacha of the "removal of her child via a text without having conducted a family assessment, despite there being a verbal safety plan in place," "routine case reviews by professionals, which are standard practice in [Child Protective Services] cases, were absent in this matter," and "no reunification plan was put into place." (ECF No. 6, at 10; ECF No. 6-1, at 1.)

As explained above, § 671(a)(15) does not confer a private right of action or contain an implied right of action, so Ms. Dacha cannot individually sue for alleged violations of this provision. *Suter*, 503 U.S. at 364. Ms. Dacha therefore fails to state a claim under § 671(a)(15) against Family Services Specialist Moody.

Ms. Dacha's claims likewise fail with respect to § 675(5)(B). As stated above, § 675(5)(B) *defines* "case review system"—it does not confer any obligations on states, counties,

individuals, or other entity to engage in any particular behavior.[14]

Ms. Dacha has failed to state a claim against Family Services Specialist Moody under §§ 671(a)(15) and 675(5)(B). Accordingly, the Court will dismiss Ms. Dacha's claims in Count Two and Four against Family Services Specialist Moody.

**c.**    **Count Three:  Ms. Dacha Fails to State a Claim Against Family Services Specialist Moody Under Title VI of the Civil Rights Act of 1964**

**i.**    **Legal Standard:  Discrimination Under Title VI of the Civil Rights Act of 1964**

"Title VI forbids discrimination on the ground of race, color, or national origin 'under any program or activity receiving Federal financial assistance.'" *Miller v. Prince George's Cnty. Gov.*, 778 F. App'x. 261, 262 (4th Cir. 2016) (quoting 42 U.S.C. § 2000d).[15] "Title VI authorizes a private cause of action only for intentional discrimination based on race, color, or national origin." *Id.* (citing *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 70 (1992)).

**ii.**    **Ms. Dacha Fails to State a Claim for National Origin Discrimination Under Title VI of the Civil Rights Act Against Family Services Specialist Moody**

Ms. Dacha "alleges discrimination on the basis of national origin" under Title VI because her child's father, Mr. White, "made statements of a culturally biased nature, including the

---

[14] Even if Ms. Dacha intended to sue under § 671(a)(16)—the provision of the AACWA that incorporates § 675(5)(B)'s definition of "case review system"—her claim would likely be barred because § 671(a)(16) is "not privately enforceable." *Jonathan R.*, 2023 WL 184960, at *15–17.

[15] Title VI of the Civil Rights Act of 1964 provides, in pertinent part:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

demand for the child's passport to be surrendered" during a J&DR Court hearing on March 10, 2023. (ECF No. 6, at 8, 10.) Ms. Dacha further alleges that Mr. White "uttered xenophobic remarks outside of the courtroom setting." (ECF No. 6, at 10.)

The Amended Complaint does not allege that Family Services Specialist Moody made these statements, endorsed them, or has any responsibility for them. Ms. Dacha fails to state a claim against Family Services Specialist Moody under Title VI of the Civil Rights Act of 1964 in Count Three.

The Court will dismiss Count Three against Family Services Specialist Moody.

### 5. Family Services Specialist Emory's Motion to Dismiss

Family Services Specialist Emory moves to dismiss Ms. Dacha's claims as barred under *Rooker-Feldman* and for failure to state a claim. (ECF No. 25, at 5–9.) As explained above, *Rooker-Feldman* does not bar Ms. Dacha's claims. But Ms. Dacha has nonetheless failed to state a claim against Family Services Specialist Emory. Ms. Dacha does not make any allegations connecting Family Services Specialist Emory to any of her claims. Indeed, beyond her name in the list of defendants, Family Services Specialist Emory is not mentioned in the Amended Complaint and Ms. Dacha asserts no specific factual allegations against her.[16] (*See generally* ECF No. 6.)

Due to the absence of *any* factual allegations against Family Services Specialist Emory, Ms. Dacha has failed to state a claim against her on all Counts. The Court will grant Family Services Specialist Emory's Motion to Dismiss and dismiss Ms. Dacha's claims against her.

---

[16] Family Services Specialist Emory is mentioned in the documents attached to the Amended Complaint. (ECF No. 6-5, at 26; ECF No. 6-4, at 6.) That Family Services Specialist Emory's name is briefly mentioned in attachments accompanying the Amended Complaint falls far short of plausibly stating a claim against her.

**B.**    **Ms. Dacha's Motion for Leave to File Second Amended Complaint and Motion to Supplement the Record**

Also pending before the Court are Ms. Dacha's Motion for Leave to File Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) (the "Motion for Leave"), (ECF No. 32), and Motion to Supplement the Record Pursuant to Federal Rule of Civil Procedure 15(d) (the "Motion to Supplement"), (ECF No. 46). Judge Lambert filed responses in opposition, arguing that both motions should be denied as futile. (ECF Nos. 34, 48.) Ms. Dacha replied. (ECF Nos. 37, 51.) For the reasons articulated below, the Court will deny the Motion for Leave and Motion to Supplement.

**1.**    **Legal Standard: Motion for Leave to Amend Under Federal Rule of Civil Procedure 15(a) and Motion to Supplement Under Federal Rule of Civil Procedure 15(d)**

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within twenty-one days after service or, if the pleading requires a response, within twenty-one days after service of the response or service of a motion under Federal Rule of Civil Procedure 12. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, unless 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (first quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962), then quoting *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006)); *see also* Fed. R. Civ. P. 15(a)(2) (directing that leave to amend should be "freely given"). An amendment is futile if the amended complaint cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) ("[I]f an amended complaint could not

25

withstand a motion to dismiss, the motion to amend should be denied as futile.") (citation omitted).

Federal Rule of Civil Procedure 15(d) permits "a supplemental pleading [that] set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "A supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (citing Fed. R. Civ. P. 15(d)). The standard used to evaluate a motion to amend and a motion to supplement are "nearly identical." *Id.* "In either situation, leave should be freely granted, and should be denied only where good reason exists." *Id.* (quotation omitted). Motions to supplement may be denied when the amendment would be futile. *See Brannen v. Selene Finance LP*, No. 2:18-cv-602 (RGD), 2019 WL 13251099, at *2 (E.D. Va. Nov. 19, 2019); *Slay's Restoration, LLC v. Wright Nat'l Foods INS. Co.*, No. 4:15-cv-140 (RAJ), 2016 WL 4257039, at *2 (E.D. Va. Aug. 10, 2016) ("The [Rule 15(d)] motion may also be denied if the amendment would be futile or the movant has unduly delayed or acted in bad faith.") (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C. V.*, 464 F.3d 1339, 1353 (Fed. Cir. 2006)).

### 2.    The Court Will Deny the Motion for Leave Because Amendment Would be Futile

Ms. Dacha explains that her proposed Second Amended Complaint "clarifies [her] claims, streamlines factual allegations, and addresses the Court's and Defendants' concerns raised in motions to dismiss." (ECF No. 32, at 1.) She also seeks to "assert new facts" relating to "extrajudicial and administrative actions" taken by Judge Lambert, and discrimination based on national origin and race. (ECF No. 32, at 1–2.)

Ms. Dacha included a copy of her proposed Second Amended Complaint with her Motion for Leave.  (ECF No. 32-1.)  The proposed Second Amended Complaint is bereft of any factual allegations that would support Ms. Dacha's new claims.  Indeed, its "factual background" section includes only six paragraphs, and states the following:

> 9. All claims arise from events occurring on or after January 1, 2023.
>
> 10. Plaintiff was subjected to unconstitutional conduct during family court proceedings, including being denied hearings, the removal of her retained counsel without cause, and the enforcement of a protective order despite unfounded CPS findings.
>
> 11. Defendant Lambert acted administratively and without jurisdiction by removing Plaintiff's attorney with no motion, hearing, or explanation.
>
> 12. Plaintiff[']s motions for visitation and reunification were ignored or denied without due process.
>
> 13. Defendant White, with the support of state actors, perpetuated false claims to alienate Plaintiff from her child.
>
> 14. Plaintiff, a Black woman of African descent and Kenyan heritage, alleges that she was treated disparately based on national origin and ethnicity. She was subjected to harsher treatment than similarly situated U.S.-born African American or white parents. Such intraracial national origin discrimination is actionable under the Equal Protection Clause and Title VI.

(ECF No. 32-1, at 2–3.)

These "factual" allegations are not facts at all, but simply legal conclusions.  Even considering the lenient amendment standard, granting Ms. Dacha's Motion for Leave would be futile because the amended complaint would not withstand a motion to dismiss.  *Perkins*, 55 F.3d at 917.  The Court will deny Ms. Dacha's Motion for Leave.

### 3.   The Court Will Deny the Motion to Supplement under Rule 15(d) Because Supplementation Would be Futile

Ms. Dacha moves the Court to supplement the record with a series of "post-complaint facts" that she alleges "demonstrat[e] a continuing constitutional injury," violations of procedural

and substantive due process, access to the courts, and deliberate indifference.  (ECF No. 46, at 2,

7.)  She seeks to add facts to the record about her continued lack of contact with her child; the

procedural posture of the J&DR proceedings, which are "currently under review in the Virginia

state courts"; and specifics about a courtroom "incident" in June 2025 during which Ms. Dacha

was "accused of making 'gestures'" and consequently "incarcerated for four (4) days."  (ECF

No. 46, at 3–5.)

Permitting Ms. Dacha to supplement the record with the facts in her Motion to

Supplement would be futile.  The Motion to Supplement does not identify the specific actors she

contends are responsible for the continued constitutional violations.  And without knowing *who*

Ms. Dacha contends is responsible for the continuing constitutional violations, the Court cannot

rely on the new allegations as a factual basis for any claim—whether originally pled in the

Amended Complaint or asserted for the first time in the Motion to Supplement—against the

existing defendants.[17]   Accordingly, the Court will deny Ms. Dacha's Motion to Supplement.

---

[17] Additionally, when a litigant seeks leave to amend or leave to supplement, she must include a copy of the proposed amended pleading in its entirety and cannot simply spackle new allegations onto her Amended Complaint (or proposed second amended complaint). *See Williams v. Wilkerson*, 90 F.R.D. 168, 169–70 (E.D. Va. 1981).  Ms. Dacha has not done so here, which provides an additional basis to deny the Motion to Supplement.

Finally, this Court observes that consideration of the allegations in the Motion to Supplement may also be barred under the abstention doctrine announced by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).  *See, e.g., Johnson v. Byrd*, No. 1:16-cv-1052, 2016 WL 6839410, at *7–11 (M.D.N.C. Jan. 5, 2017) (concluding that *Younger* abstention was appropriate for complaint involving ongoing child custody dispute).  That too would render futile any grant of Ms. Dacha's Motion to Supplement.

### C.  The Court Will Dismiss Ms. Dacha's Claims Against Mr. White for Failure to Serve

To date, Ms. Dacha has not served Defendant Gary Christopher White, nor has she established good cause for her failure to do so.  The Court will dismiss her claims against him.

#### 1.  Legal Standard:  Dismissal for Failure to Serve Pursuant to Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 90-day period.  Fed. R. Civ. P. 4(m).[18]  District courts within the Fourth Circuit have found good cause to extend the ninety-day time period when the plaintiff has made "reasonable, diligent efforts to effect service on the defendant." *Venable v. Dep't of Corr.*, No. 3:05-cv-821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)).  Leniency is especially appropriate when factors beyond the plaintiff's control frustrate his or her diligent efforts. *See McCollum v. GENCO Infrastructure Sols.*, No. 3:10-cv-210, 2010 WL 5100495, at *2 (E.D. Va. Dec. 7, 2010) (citing *T & S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W.Va. 1996)).  Thus, courts are more inclined to find good cause where extenuating factors exist such as active evasion of service by a defendant, *T & S Rentals*, 164 F.R.D. at 425 (citing *Prather v. Raymond Constr. Co.*, 570 F. Supp. 278, 282 (N.D. Ga. 1982)), or stayed proceedings that delay the issuance of a

---

[18] Federal Rule of Civil Procedure 4(m) provides, in relevant part:

(m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m)

summons. *McCollum*, 2010 WL 5100495, at *2 (citing *Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 485 (D. Md. 2006)).

However, "'[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service' generally are insufficient to show good cause." *Venable*, 2007 WL 5145334, at *1 (quoting *Vincent v. Reynolds Mem'l Hosp.*, 141 F.R.D. 436, 437 (N.D. W.Va. 1992)). While a court might take a plaintiff's *pro se* status into consideration when coming to a conclusion on good cause, *Lane v. Lucent Techs., Inc.*, 388 F. Supp. 2d 590, 597 (M.D.N.C. 2005), neither *pro se* status nor incarceration alone constitute good cause. *Sewraz v. Long*, No. 3:08-cv-100, 2012 WL 214085, at *2 (E.D. Va. Jan. 24, 2012) (citations omitted).

### 2. Ms. Dacha Has Neither Served Mr. White Nor Established Good Cause for Her Failure to Serve Him

On March 14, 2025, the Clerk issued a summons for Mr. White. (ECF No. 9, at 9–10.) On May 12, 2025, the summons was returned unexecuted. (ECF No. 20.) On January 6, 2026, the Court ordered Ms. Dacha to show cause as to why Mr. White had not been served and cautioned that "[f]ailure to establish good cause for the failure to effectuate service may result in dismissal of [her] claims against Mr. White without prejudice." (ECF No. 44, at 2.)

On January 12, 2026, Ms. Dacha responded to the show cause order. (ECF No. 45.) Ms. Dacha stated that she "previously effectuated service upon Defendant Gary Christopher White together with [the] other defendants in this action," although she "did not have the executed proof of service in her possession," so "such documentation was not then reflected on the docket." (ECF No. 45, at 1.) Ms. Dacha further explained that, despite apparently already

effectuating proper service on Mr. White, she "again effectuated service on Defendant Gary Christopher White" in January 2026.  (ECF No. 45, at 1.) [19]

On January 29, 2026, Ms. Dacha filed a "Proof of Service/Declaration Regarding Service," representing that she "caused a true and correct copy of the Summons and Complaint . . . to be served on Defendant Gary Christopher White by U.S. Mail" on January 21, 2026.  (ECF No. 50, at 1–2.)

Ms. Dacha has not served Mr. White.  Although she represents that she "previously effectuated service upon Defendant Gary Christopher White together with [the] other defendants in this action," (ECF No. 45, at 1), the United States Marshal returned Mr. White's summons unexecuted on May 12, 2025, (ECF No. 20).  Mr. White was not served with the other defendants in this case.

Ms. Dacha also did not "serve" Mr. White again in January 2026.  To serve Mr. White after his summons was returned unexecuted, Ms. Dacha would have needed a new summons from the Clerk.  *See* Fed. R. Civ. P. 4(a)–(b) (explaining that a summons must be "signed by the clerk" and "bear the court's seal").  The docket reflects that Ms. Dacha neither requested nor was issued a new summons, so any "summons" that Ms. Dacha served on Mr. White in January 2026 was not court-issued and would not constitute proper service.  *See T.W. v. Hanover Cnty. Pub. Schs.*, No. 3:12-BCV-300, 2012 WL 13195189, at *3 (E.D. Va. May 11, 2012) (explaining

_____

[19] In the Proof of Service/Declaration Regarding Service, Ms. Dacha inconsistently states that she served Mr. White on January 12, 2026 and January 21, 2026.  (ECF No. 50, at 1.)  An accompanying exhibit reflects USPS delivery on January 21, 2026.  (ECF No. 50, at 4.)  January 12, 2026 appears to be a scrivener's error, and the Court will assume that Ms. Dacha argues that she served Mr. White on January 21, 2026, not January 12, 2026.

that plaintiffs cannot serve summonses on individuals that are not "signed, sealed, or issued by the Clerk").[20]

Ms. Dacha likewise has not shown good cause for failing to serve Mr. White. Beyond insisting that she has served Mr. White, Ms. Dacha's response to the Court's show cause order provides no explanation as to why service has not been effectuated. While Ms. Dacha may have believed that Mr. White was properly served, and that her attempt to re-serve him in January 2026 was sufficient, these efforts do not amount to good cause. *Venable*, 2007 WL 5145334, at *1 ("Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service generally are insufficient to show good cause.").

Because Mr. White has not been served and Ms. Dacha has not established good cause, the Court must dismiss Ms. Dacha's claims against Mr. White. Fed. R. Civ. P. 4(m).

---

[20] Even if Ms. Dacha had obtained a new summons from the Clerk, Ms. Dacha cannot serve Mr. White via certified mail.

The Federal Rules of Civil Procedure provide that service of process on individuals can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e). Federal law does not permit service by certified mail. *See* Fed. R. Civ. P. 4(e)(2).

For service on individuals, Virginia Code § 8.01-296 provides that service may be effectuated by (1) delivering a copy in writing to the party in person, or (2) through two methods of "substituted service," neither of which allow the plaintiff to serve the defendant *only* by mail. *See* Va. Code § 8.01-296(2)(b); *Great Midwest Ins. Co. v. WB Contracting Grp., Inc.*, No. 3:23-cv-680 (MHL), 2024 WL 3823792, at *4 (E.D. Va. Aug. 14, 2014) (explaining Virginia's "nail and mail" service method that permits service "if no personal qualified to receive service of process is present at the usual place of abode" by "'*posting a copy of such process at the front door or at such other door as appears to be the mail address of such place of abode*' *and* "mail[ing] to the party served a copy of such process" no less than 10 days before judgment of default may be entered) (emphasis added).

### D.   Ms. Dacha's Motion to Appoint Counsel

Finally, Ms. Dacha filed a Motion to Appoint Counsel seeking appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) or referral of the case to the Eastern District of Virginia's pro bono panel for assignment.  (ECF No. 42, at 3.)

### 1.   Legal Standard:  Appointment of Counsel

Appointment of counsel in civil cases "is a privilege and not a right." *Bowman v. White*, 388 F.3d 756, 761 (4th Cir. 1968).  However, a "court may request an attorney to represent any person unable to afford counsel" in a civil case.  28 U.S.C. § 1915(e)(1).  A district court should appoint counsel if "the case presents exceptional circumstances." *Jenkins v. Woodward*, 109 F.4th 242, 247 (4th Cir. 2024).  A case presents "exceptional circumstances" where the plaintiff (1) "has a colorable claim," and (2) "lacks the capacity" to present his or her claim in light of the "claim's objective complexity and the plaintiff's subjective abilities." *Id.* at 247–48 (explaining that a district court must consider whether the plaintiff asserts a non-frivolous claim, the difficulty of that claim, and the plaintiff's individual skill and ability to present that claim).

### 2.   Ms. Dacha is Not Entitled to Appointment of Counsel Because Her Case Does Not Present Exceptional Circumstances

Ms. Dacha argues that exceptional circumstances exist that authorize appointment of counsel.  (ECF No. 42, at 2.)  More specifically, Ms. Dacha explains that the nature of case, which includes "complex constitutional issues involving parental rights, judicial immunity, and due process protections," as well as "navigation of procedural doctrines such as *Younger* abstention, *Rooker-Feldman*, and qualified immunity," (ECF No. 42, at 2), warrant appointment of counsel.

To the contrary, no exceptional circumstances exist that justify appointment of counsel. As the Court explained above, Ms. Dacha has not presented a colorable claim for relief against

any of the Defendants named in this action.  Even if Ms. Dacha had stated a colorable claim for

relief, the types of claims here are not so complex as to necessitate appointment of counsel.

Additionally, Ms. Dacha does not appear to lack capacity to present her claims.  Ms.

Dacha timely responded to each of the four motions to dismiss and articulated coherent

rationales in opposition to each.  She also filed a number of other *pro se* motions, all of which

included relevant legal citations and demonstrated a clear understanding of the case and its

posture.  Ms. Dacha's diligent involvement in this matter demonstrates that she is capable of

litigating the matter on her own.

Considering both the complexity of the claims and Ms. Dacha's subjective abilities to

litigate these issues, the Court concludes that exceptional circumstances do not exist.

The Court will deny Ms. Dacha's Motion for Appointment of Counsel.[21]  (ECF No. 42.)

### III.  Conclusion

For the reasons articulated above, the Court will grant the Motions to Dismiss. (ECF Nos.

11, 17, 21, 24.)  The Court will grant Ms. Dacha's Motion for Leave to File Sur-reply.  (ECF No.

30.)

---

[21] Although the Court considers the Motion for Appointment of Counsel on the merits, because the Court dismisses all of Ms. Dacha's claims, the Motion for Appointment of Counsel is also moot.

The Court will deny Ms. Dacha's Motion for Leave to File Second Amended Complaint, (ECF No. 32), Supplemental Notice and Motion to Supplement the Record, (ECF No. 56), and her Motion for Appointment of Counsel, (ECF No. 42).  The Court will dismiss Ms. Dacha's claims against Mr. White for failure to effectuate service of process under Rule 4(m).

An appropriate Order shall issue.

Date: **3/5/26**
Richmond, Virginia

/s/

M. Hannah Lauck
Chief United States District Judge

35